IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:  Chapter 11

THE TOWERS OF CHANNELSIDE, LLC,   Case No. 8:08-bk-939-KRM

_____Debtor._____/

## ORDER CONFIRMING DEBTOR'S CONFORMING SECOND AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

This cause came on for hearing before the Court on September 22, 2008, at 1:30 p.m. (the "Hearing"), to consider confirmation of the Debtor's Second Amended Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, dated August 29, 2008 (as modified pursuant to the terms of this Order, the "Plan")[1] [Dkt. No. 449]. The Debtor also filed the Disclosure Statement for Plan of Reorganization, dated April 24, 2008 (the "Disclosure Statement") [Dkt. No. 184] and the First Supplement to the Disclosure Statement [Dkt. No. 257] on June 20, 2008. Additionally, on August 29, 2008, the Debtor filed its Second Supplement to Disclosure Statement [Dkt. No. 450]. The following objections to confirmation were filed:

A. Objection to Confirmation of Second Amended Plan of Reorganization and Objection to Final Approval of the Conditionally Approved Disclosure Statement, filed by Connie Occhipinti and Stuart Hurry [Dkt. No. 528];

B. Objection to Confirmation of Second Amended Plan of Reorganization and

---

[1] Unless otherwise defined herein, capitalized terms herein shall have the same meaning ascribed to them in the Plan.

Objection to Final Approval of the Conditionally Approved Disclosure Statement, filed by James T. Dunne [Dkt. No. 525];

C. Objection to Confirmation of Second Amended Plan of Reorganization and Objection to Final Approval of the Conditionally Approved Disclosure Statement, filed by Louise Gritmon [Dkt. No. 523];

D. Objection to Confirmation, filed by Obieone Channelside Tower 601, LLC, Obieone Channelside Tower 701, LLC, Obieone Real Invest 1, LLC, Obieone Channelside Tower 1101, LLC, Obieone Channelside Tower GP4, LLC, and Towers 601, Inc. [Dkt. No. 522];

E. CT Towers, LLC's Objection to the Debtor's Second Amended Plan of Reorganization and Debtor's Attempt to Confirm Plan [Dkt. No. 529];

F. Objection by the Official Committee of Unsecured Creditors to the Debtor's Second Amended Plan of Reorganization [Dkt. No. 526];

G. Objection to Confirmation filed by Clarence Rowland, Matt and Zhang Hong Fury, Peter and Nicola Hoobyar, and Clarence Rowland and Carol A. Brown [Dkt. No. 507];

H. U.S. Bank's Limited Objection to Confirmation and Objection to Assumption of Escrow Agreement [Dkt. No. 520];

I. United States Trustee's Objection to Confirmation of the Second Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code [Dkt. No. 541];

J. Joinder in Objection to Confirmation, filed by Channelside 608T-2 Realty,

LLC and Channelside 1801T-2 [Dkt. No. 530].

The foregoing objections are collectively referred to herein as the "Objections".

At the hearing, counsel for the Debtor announced the following modifications to the Plan:

A.  The Plan will include a definition of "Closing Agent", as follows: "Closing Agent" means: (i) Urban Title, on the condition that Urban Title charges market rates for its services; (ii) a Closing Agent selected by the unit purchaser if the sales contract gives the purchaser the right to make said selection; or (iii) if Urban Title does not charge market rates, a Closing Agent selected by the Distribution Agent, if any buyer fails to select a Closing Agent. In all circumstances, the Debtor shall only utilize a Closing Agent that is covered by a letter of protection against defalcation by the Closing Agent as provided by the Debtor's insurance carrier."

B.  Section 5.7 of the Plan is amended to specify that if the fees charged by Urban Title are greater than market rate, any such excess shall be paid to the Distribution Agent for distribution Pro Rata to the Holders of Allowed Class 6 Claims.

C.  Section 5.7 of the Plan is further amended to provide in the first paragraph that "[s]pecifically, therefore, until such time as all Class 6 Claims have been paid in full, the gross proceeds from the sale of the units shall be disbursed by the Closing Agent immediately after closing, as follows:

    a.  To the Debtor in an amount not to exceed 25% of such proceeds, less any amounts used or retained by the Closing Agent to pay normal, customary and commercially reasonable closing costs..."

D.  With respect to post-confirmation expenses, there is added a Section 8.14, which shall state as follows: "Post Confirmation Expenses: All post-confirmation expenses incurred by the Debtor shall be commercially reasonable and necessary, and shall be subject to the standard of whether a reasonably prudent business person would incur such expenses. Further, the Debtor, its officers and directors and members, are expressly prohibited from engaging in any self-dealing and each of the Debtor, its Affiliates and any entity owned or controlled by any officer, director, or member, directly or indirectly, is prohibited from engaging in related party transactions, unless any such transaction is in the ordinary course of its business and on terms which are intrinsically fair, commercially reasonable and are no less favorable to the Debtor than would be obtained in a comparable arm's length transaction with an unrelated third-party."

E.  With respect to release prices, Section 5.7 shall contain the following additional provision: "following payment of Wachovia's Allowed Secured Claim to $10 million or less, (a) the Debtor shall not sell any condominium units for an amount less than 85% of the minimum release prices established in the Wachovia Loan Documents, without the consent of the Distribution Agent, who shall consult with the Holder of the majority of the Allowed Class 6 Claims (the "Majority Holder") before rendering such consent; and (b) the foregoing release prices shall not be modified without the consent of the Distribution Agent, who shall consult with the Majority Holder before rendering such consent. Following payment in full of Wachovia's Allowed Secured Claim (x) unless the Distribution Agent, the Majority Holder and the Debtor can agree on the appropriate minimum release prices, the release prices shall be adjusted to reflect market conditions

based on semi-annual appraisals, and such adjustment shall be subject to the approval of the Distribution Agent, who shall consult with the Majority Holder before rendering such approval; and (y) the Debtor shall not be authorized to close any sales that result in a distribution less than the minimum release price to the Holders of Allowed Unsecured Claims without the prior written consent of the Distribution Agent, who shall consult with the Majority Holder prior to rendering such consent. Any disputes arising hereunder shall be resolved by the Bankruptcy Court." Nothing in this paragraph shall operate or be construed to limit or impair any of the rights or powers held by Wachovia or the Bank Group under the Plan.

F. There shall be added in Section 9 of the Plan the following phrase: "The Distribution Agent is a fiduciary with obligations running to all creditors."

G. Section 8.9 of the Plan shall be revised such that it now states as follows: "Base Salary to Management. Each of the Managers shall receive distributions of $72,600 for 18 months from the Effective Date. The base compensation payable to Michael McGuiness shall reduce the incentive compensation cap described in Section 8.10. Michael McGuiness' base compensation is not an offset to the promissory note due by him to the estate."

H. Section 8.10 is revised to include the following terms: "The aggregate amount of incentive compensation described herein is capped at $2.1 million; however, as noted above in Section 8.9, this aggregate incentive compensation cap is reduced by the base compensation actually paid to Michael McGuiness. Notwithstanding this cap, after the Holders of Allowed Class 6 General Unsecured Claims have received a

distribution equal to fifty percent (50%) of their Claims, the Managers may receive the incentive compensation otherwise described herein."

I. Section 8.11 of the Plan is deleted, along with the definition of "MJM Promissory Notes."

J. There shall be added a Section 8.12 that provides as follows: "<u>Office Rent.</u> The monthly rent payable by the Debtor for its office space shall be reduced to fifty percent (50%) of the usual amount (ie, from $3,800 to $1,900), payable for 24 months from the Effective Date. On or before the third anniversary of the Effective Date, the Debtor will meet and confer with the Distribution Agent and the Majority Holder to agree on a reduction in rent, as appropriate. If no such agreement can be reached, the Bankruptcy Court will retain jurisdiction to address the issue. The standard to be used by the Bankruptcy Court is whether a reasonably prudent business person would incur such expense."

K. There shall be added a Section 8.13 that provides as follows: "<u>Employees.</u> The employees to be retained post-confirmation, as reflected in the budget attached as a Plan Document, shall only be retained for a 24 month period from the Effective Date, and on or about the third anniversary of the Effective Date, the Debtor will meet and confer with the Distribution Agent and the Majority Holder to agree on a reduction in staffing, as appropriate. If no such agreement can be reached, the Bankruptcy Court will retain jurisdiction to address the issue. The standard to be used by the Bankruptcy Court is whether a reasonably prudent business person would incur such expense."

L. Section 8.7 of the Plan, with respect to Causes of Action against insiders,

Managers or Affiliates, is amended in part to provide that the deadline for the Distribution Agent to file a lawsuit is 180 days, and may be extended solely for cause. Additionally, the Distribution Agent's fees and any fees for any professionals retained by the Distribution Agent during the 180 day investigative period shall be capped at $75,000 in the aggregate.

M.  There shall be added to Section 8.1 the following provision: "The Debtor shall not borrow money or grant Liens after the Effective Date of the Plan without the written consent of the Distribution Agent and Wachovia; provided, however, such consent shall not be required if the borrowings and granting of Liens do not materially and adversely affect the rights of Wachovia or Holders of Allowed Unsecured Claims, as the case may be, under the Plan."

N.  Section 11.2 of the Plan shall be revised such that it now states as follows:

> **Discharge of Claims and Termination of Equity Interests**.
>
> Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and the Reorganized Debtor from any and all Debts of and Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and the Reorganized Debtor, and their respective successors or assigns, shall be discharged from any Claim or Debt that arose prior to the Effective Date against the Debtor and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim

based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim against the Debtor, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or the Reorganized Debtor, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, or Liabilities they may have against the Debtor based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date and the Confirmation Order shall contain appropriate injunctive language to that effect. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, or Debt. Notwithstanding the foregoing, the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan. Additionally, notwithstanding the foregoing, nothing contained herein shall be construed to prevent a Person or Entity from taking action to establish liability of the Debtor, its successors or assigns, for the limited purpose of: (a) pursuing insurance proceeds or benefits to satisfy a Claim in whole or in part; or (b) prosecuting a guaranty action against third parties.

O. There shall be added in Section 9.3.1 the following sentence: "Within ten Business Days after the date on which the Allowed Secured Claim of Wachovia is paid in full, the Distribution Agent shall post a bond, the annual premium for which is $20,000.00, which shall be funded by the Debtor."

8

P.  Section 9.2 shall be revised such that it states as follows:

### *De Minimus* Distributions

To avoid the disproportionate expense and inconvenience associated with making distributions in amounts less than $25.00 each with respect to Allowed Unsecured Claims, the Distribution Agent shall be excused from making interim distributions to Holders of Allowed Unsecured Claims in amounts of less than $25.00 each, provided, however, any amounts not disbursed to a particular Creditor on an interim basis pursuant to the terms herein shall be held in the trust account and shall be disbursed upon the earlier of: (i) on an interim basis if at the time of the distribution the aggregate amount owed to the Creditor equals or exceeds $25.00, or (ii) at the time of the final distribution.

Q.  Section 9.4 shall be revised such that it reads as follows:

### Unclaimed Distributions.

9.4.1   If the Holder of an Allowed Unsecured Claim fails to negotiate a check issued to such Holder within sixty (60) days of the date such check was issued, then the Distribution Agent shall provide written notice to such Holder stating that, unless such Holder negotiates such check within sixty (60) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim. The provisions of this Article shall only apply if the Distribution Agent sent the check to the Claimant's address as listed on the proof of claim or at an address provided to the Distribution Agent in a subsequent written notice to the Distribution Agent.

9.4.2 If a Cash distribution made pursuant to the Plan to any Holder of an Allowed Claim at the Claimant's address as listed on the proof of claim or at an address provided to the Distribution Agent in a subsequent written notice to the Distribution Agent is returned to the Distribution Agent due to an incorrect or incomplete address for the Holder of such Allowed Claim, the Distribution Agent has sent a follow-up letter to the particular Claimant, and no claim is made in writing to the Distribution Agent as to such distribution within sixty (60) days of the date such distribution was made, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such distribution, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim.

9.4.3 Any unclaimed Cash distribution as described in Articles 9.4.1 and 9.4.2 above shall become the property of the Distribution Agent for further distribution under the Plan.

R. Section 9.8 shall be revised such that it now reads as follows:

**No Interest on Claims**

Except as otherwise expressly stated in the Plan or otherwise allowed by Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition penalties or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim. Notwithstanding the foregoing, if distributions under the Plan exceed the total amount of Allowed Unsecured Claims, the Holders of Allowed Unsecured Claims shall receive their Postpetition contractual rate of interest before any distribution is made to Holders of Equity Interests on account of said Equity Interests.

S.  Section 9.10.2 shall be revised such that it now states as follows:

>   Notwithstanding any else herein, if the Bankruptcy Court enters an order disallowing a Claim and the order is still on appeal as of a particular Distribution Date, the Claim of the appealing Creditor is deemed disallowed unless the Creditor has obtained a stay pending appeal. Moreover, the Distribution Agent is not required to maintain any reserve for such Disallowed Claim and shall proceed to provide to the Holders of Allowed Claims in Class 6 the distributions to which such Holders are entitled under the Plan without considering any Disallowed Claims. Further, in the event that a distribution is made and the order disallowing the Disallowed Claim is reversed on appeal, the sole right of the Holder of such Claim shall be added to any undistributed funds in the account(s) established for the benefit of Unsecured Creditors pursuant to Section 502(j) of the Bankruptcy Code.

T.  Section 5.6 of the Plan is hereby amended such that it now states as follows:

>   **Class 5: Secured Claims of Disputed Deposit Claimants**
>
>   Class 5 consists of Allowed Secured Claims of the Disputed Deposit Claimants. No sooner than eleven (11) days after the date that a Disputed Deposit Claim becomes an Allowed Claim in whole or in part, whether through settlement or litigation, the Debtor shall provide a written request (joined in by the Claimant if the Claim has been settled) to the applicable Escrow Agent to pay to the Disputed Deposit Claimant the amount of its Allowed Secured Claim and to pay to the Debtor the remaining amount held in escrow attributable to such Disputed Deposit Claim. No sooner than eleven (11) days after the date that a Disputed Deposit Claim becomes a Disallowed Claim in its entirety, the Debtor shall provide a copy of the Order disallowing such Claim to the applicable Escrow Agent, and the Escrow Agent shall immediately pay to the Debtor the amount held with respect to the Disputed Deposit Claim. Nothing contained within the Plan or the Confirmation Order is intended to impair the legal or equitable rights, if any, of the Disputed Deposit Claimants or the Debtor as those rights may have existed on the Petition Date, including the right of all such parties to argue regarding the appropriate forum to litigate the Disputed Deposit Claims or the right to assert claims for interest or attorney fees. All funds currently held by any Escrow Agent with respect to the Disputed Deposit Claims shall remain in Escrow and shall remain as

security for the corresponding Disputed Deposit Claims pending instructions as set forth above or further order of the Bankruptcy Court. Neither the Distribution Agent nor any Creditor, except the corresponding Disputed Deposit Claimant, may make any Claim or assert any Lien against the Disputed Deposits. Additionally, whatever rights, if any, the Disputed Deposit Claimants and the Debtor may have under Section 365 are hereby preserved and maintained. Each Escrow Agent holding funds on account of a Disputed Deposit Claim shall be conclusively entitled to rely upon the provisions of this Plan and the Confirmation Order and shall have no liability to any party for any distribution to any party in compliance with the Plan and the Confirmation Order. Class 5 is Unimpaired.

U. Section 7.3 of the Plan is hereby amended such that it now states as follows:

### Assumption or Rejection of Condominium Purchase Contracts

Notwithstanding anything herein to the contrary, whatever rights, if any, the Debtor and Holders of Disputed Deposit Claims may have under Section 365 of the Bankruptcy Code are hereby preserved and shall be subsumed within and carried with the adversary proceeding or contested matter related thereto. The Confirmation Order shall not prejudice whatever rights the Debtor and the Holders of Disputed Deposit Claims may have under Section 365 of the Bankruptcy Code. Nothing contained in the Plan or the Confirmation Order shall constitute an adjudication of whether the provisions of Section 365 apply to purchase contracts for the sale of condominium units, or whether the Debtor has satisfied such requirements. All such issues arising under Section 365 as they may relate to the assumption or rejection of purchase contracts for the sale of condominium units by and between the Debtor and any unit purchaser shall be preserved and shall be considered in connection with either the objections to the Disputed Deposit Claims or adversary proceedings involving the Disputed Deposit Claims. The deadline for assumption or rejection of said purchase contracts, to the extent said contracts were executory as of the Petition Date, shall be extended until further order of the Court.

V. Section 11.3 shall be amended such that a provision is added as follows: "Debtor's members, managers or executive officers shall not be relieved or released from any personal liability to the Bank Group or any Person."

W. The definition of "Disputed Deposits" is amended such that it now states:

> **"Disputed Deposits"** means any Prepetition Deposit, the refund of which has been asserted by a condominium unit purchaser through the timely filing of a Proof of Claim on or before the Bar Date, which proof of claim has not been disallowed.

The Court finds the Plan meets all of the requirements under Section 1129(a) of the Bankruptcy Code, that notice of the Confirmation Hearing to parties in interest was sufficient and that it complied with the applicable Bankruptcy Rules. The Court expressly finds that notice of the Plan and the deadlines for confirmation was adequate and sufficient under the circumstances to notify all parties in interest and creditors and that such notice complies in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court and otherwise satisfies the requirements of due process. The Court further finds that appropriate affidavits of mailing and certificates of service have been filed in the record with respect to such notice.

For the reasons stated orally and recorded in open court, which shall constitute the decision of the Court, it is

ORDERED that:

1. The Plan is CONFIRMED.

2. The Disclosure Statement, as supplemented, is APPROVED.

3. The modifications to the Plan as set forth above are APPROVED.

4. The Objections are OVERRULED with predjudice.

5. The Settlement Agreement is approved in all respects pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

6. The Debtor is authorized to execute and deliver all documents and to take all appropriate action necessary to consummate the Plan.

7. The terms and provisions of this Order shall be binding upon the Debtor, its estate, the Committee, all Creditors, all Equity Interest Holders, Wachovia, Batson-Cook of Tampa, all parties in interest, and the respective successors and assigns of each of the foregoing.

8. This Court shall retain jurisdiction to interpret and enforce the provisions of this Order and the Plan.

9. Debtor's counsel shall serve a copy of the Order on all Creditors using a current mailing matrix and shall promptly file a certificate of service with the Court of such service.

10. The Debtor shall not be required to resolicit acceptances of the Plan because the modifications set forth herein do not adversely affect the rights of any Creditors.

11. If there is a conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control.

12. Debtor's members, managers or executive officers shall not be relieved or released from any personal liability to the Bank Group or any other person or entity. The Court makes no findings as to the enforcement of any prepetition subordination agreements between the non-debtor parties.

DONE AND ORDERED at Tampa, Florida, on OCT 0 1 2008.

K. RODNEY MAY
United States Bankruptcy Judge

Copies to:

All creditors and parties in interest.

H:\User\Towers of Channelside\Plan - DS\Confirmation\Confirmation Order v.1.DOC

15